No. 915

First Circuit

BROWN v. INDUSTRIAL LUMBER CO.

(March 8, 1932.   Opinion and Decree.)

Julius T. Long, of Shreveport, attorney for plaintiff, appellant.

Thornton, Gist & Richey, of Alexandria, attorneys for defendant, appellee.

LeBLANC, J.   This is a compensation suit in which the plaintiff, a section track foreman, was injured when he was thrown from the motorcar in which he was riding as it collided with an automobile. He fell on the track rails and received rather severe injuries to his right wrist and right knee. He was being paid a wage of $4 per day. The accident and nature of his injuries are not disputed. In fact, plaintiff was paid compensation at the rate of $15 per week from November 5, 1929, the date of his injury to September 13, 1931, when it is alleged by the defendant he had entirely recovered. His claim here is for four hundred weeks' compensation as for total disability, less of course the amounts already paid, and for attorney's fees. He also prays that the fees of the expert witnesses be fixed at not less than $25 for each and that they be taxed as costs.

From a judgment rejecting his demand, he has appealed.

The petition sets out various injuries about the body and also to the heart and kidneys which it is alleged plaintiff suffered as a result of the accident, but these are not mentioned in the testimony by any one, and we take it that the disability he complains of is limited to the injuries to his knee and wrist, and the real issue is whether or not his present condition is the result of the said injuries or whether it is not due to natural causes and those infirmities incidental to advancing old age.

The testimony of the plaintiff himself and the two lay witnesses who testified for him are of very little assistance in determining the real issue involved, except it be to the extent that it shows that prior to the injury he was not aware of any impairment of health and was able to do

more work than he presently can. We have therefore to rely in a large measure on the testimony of the five physicians who testified in the case for a solution of the question presented. Of the five, one was called by the plaintiff and the four others by the defendant. All five are regarded by the district judge as experts who are very competent and high-class men. They all, including Dr. Hargrove, who was called by plaintiff, agree in their statements that the plaintiff's right knee no longer showed any effects of the injury. We quote from Dr. Hargrove:

"He gave a history of having had an injury some months ago and complained of having stiffness in his right wrist and some trouble with his right knee; I examined both; I found no trouble that I could determine in the knee, but some stiffness in the wrist."

He described the condition of the wrist more minutely by saying that there was "some retarded motion, both front and rear," and he attributed it to trauma which he connected with the injury presented in the history of the case. On this showing, therefore, all discussion as to there being any connection between the accident and injury to the knee and the alleged disability can be eliminated, and the issue is further narrowed down to the question as to what must we attribute the condition in the wrist.

Besides the opinion of Dr. Hargrove, we find Dr. McKinney stating that there is a slight possibility of injury to the wrist. He testifies that he found "no evidence of injury to the wrist, except the slight possibility of an injury on the lower anterior articular border of the radius—slight possibility." Further on, he adds that it is very doubtful whether or not there is any injury. Like two of the other experts called by defendant, Dr. McKinney was of the opinion that the plaintiff was suffering from arteriosclerosis, commonly referred to as a hardening of the arteries. He, as well as they, based this opinion on the lime or calcium deposits in the arteries as revealed in the X-ray plates introduced in evidence. Dr. Holcombe and Dr. Rand, the two other experts referred to, are very positive in their conclusions that the plaintiff presented a case of marked or advanced hardening of the arteries which they could not connect with the injury he had suffered more than a year before the time they examined him. Dr. Holcombe was pronounced in his views that if there was any injury at all at this time in the wrist it was pathological and not traumatic. Drs. Holcombe and Rand both state that it is impossible to point out the specific cause of hardening of arteries. It is usually associated with old age, high blood pressure, Bright's disease, and found among people who have focal infections and poor elimination. All the doctors seem to think that the plaintiff is a man of premature old age. Even Dr. Hargrove, his own witness, states that although his age is fifty-seven years, he presents the appearance of a man about sixty-five. Dr. Holcombe found his blood pressure to be excessively high and that he had a focal infection in the mouth which he associated with four remaining diseased teeth. "In making a resume of this case," he said, "I think it is a case of pathological destruction, which has been superinduced by his infective processes."

In addition to the testimony of the experts who examined plaintiff at varied times a good many months after his injury, we have that of Dr. Mangham who attended him and treated him immediately

following the accident. His examination at the time showed that the plaintiff had contusions to the tissues of his knee and wrist joints, with much swelling, which subsided in two or three weeks. Plaintiff lived at Oakdale and wanted to return to his home. He was permitted to do so but instructed to remain in bed for a time, and then to report to the doctor once a week, which he did for several months, after which time he was considered as having recovered from any disability and was taken off of the compensation list. Dr. Mangham was of the opinion that he was then suffering from hardening of the arteries.

We fail to find in the testimony of any of the doctors that hardening of the arteries is ever connected with injuries resulting from trauma. Dr. Holcombe leads us to believe on the contrary, that there can be no connection between the two. Asked whether the calcium deposit on the arteries found in plaintiff's case would have been brought about by the condition he found, regardless of any trauma, he answers that it would and adds: "No calcium deposits are acquired in any artery from trauma." In view of this statement and the lack of any positive proof that it is a condition which even might have been superinduced by the injury plaintiff received, we do not think that this is a case where the doctrine of a pre-existing or latent disease being activated by the injury so as to produce the disability, is to be applied.

The learned trial judge gave careful consideration to the case as appears from the ably prepared reasons for judgment submitted by him and with which we agree fully.